# HANSEN *v.* DEAN.

PATENTS; INTERFERENCE.

Where in an interference case involving an improvement in telephone transmitters, in which it was necessary for the junior party to overcome the filing date of his adversary, it appeared that the junior party, about two years prior thereto, was directed by his employer to work upon the development of a new transmitter; that he produced in evidence a sketch then made, which fell short of showing the invention of the issue; that, although one of his witnesses testified that disclosure had then been made to him, such testimony was given four years after the occurrence and was not convincing; that the junior party during the time he was experimenting, by direction of his employer, who was alert to discover new ideas in transmitters, constructed several transmitters which did not embody the invention; that he saw and tested the transmitter produced by the senior party, who had entered the same employ, and made no complaint to his employer that the invention was his, although he made some complaint to others; and that it was not until four months after the senior party's application was filed and seven months after he had tested the latter's transmitter, that he first constructed one embodying the invention of the issue,—it was *held*, affirming a decision of the Commissioner of Patents, that the senior party was entitled to an award of priority.

No. 408.  Patent Appeals.  Submitted January 25, 1907.  Decided February 5, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are stated in the opinion.

*Mr. Charles A. Brown, Mr. Edward E. Clement,* and *Mr. E. F. Colladay* for the appellant.

*Mr. Curtis B. Camp, Mr. Benjamin R. Johnson, Mr. R. S. Taylor,* and *Mr. W. Clyde Jones* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

Appeal from a decision of the Commissioner of Patents in an interference proceeding, awarding judgment of priority of invention to William W. Dean, the senior party.

The issue is expressed in the following count: "In a telephone transmitter, the combination with a diaphragm, a recess or chamber carried thereby, a supplemental diaphragm, a block secured to the supplemental diaphragm, a support for the block, and means to secure the block in its support in any position, whereby the block may be adjusted in its support by the vibration of the diaphragm and then secured in adjusted position."

Dean filed an application March 22, 1901, upon which a patent issued November 26, 1901. Inasmuch, however, as Rasmus Hansen [the appellee] filed his application August 5, 1901, the applications were concurrently pending.

The first question, to which we address ourselves, is whether Hansen has overcome the filing date of Dean's application, for, if he has not, his appeal must fail.

This is the second interference between these parties. The first interference was between the same application of Hansen and a later application of Dean. That interference was dissolved by the Primary Examiner because the issues, in his opinion, were unpatentable. Hansen thereupon copied claim 15 of the Dean patent, and this interference was declared.

All the tribunals of the Patent Office concur in awarding priority to Dean. The Examiners-in-Chief and the Commissioner hold that Hansen has failed to overcome Dean's filing date, and they therefore confine their decision to a consideration of that question.

In view of the prior state of the art and the action of the Primary Examiner in dissolving the first interference for lack of patentability of its issues, it is apparent that the invention

is a very narrow one and that the "means to secure the block in its support in any position" is of its very essence. This means consists of a set screw, which is tightened, after the block has become adjusted in the support, by the vibration of the diaphragm.

During the winter or spring of 1899 Hansen commenced working for the Kellog Switchboard and Supply Company, of Chicago, Illinois, Dean's assignee, assembling and sometimes testing telephone transmitters. Sometime in June, 1899, Mr. Kempster B. Miller, who had charge of the manufacturing department of that company, authorized and directed Hansen "to "work on the development of a new transmitter, and to experiment on any ideas he evolved, with a view to reducing the ideas to practical form." Mr. Miller graduated from Cornell University after a five years' course in electrical engineering. After his graduation he became an assistant examiner of the Patent Office, and had charge of applications for patents relating to telephony. He resigned in 1896, and for a time was chief electrician of the Western Telephone Construction Company, of Chicago. Hansen was then also employed by that company, and worked under Miller's direction. In May, 1899, Miller engaged with the Kellog Company. His testimony in this proceeding shows him to be a candid and intelligent witness, and highly skilled in the art. He testifies that the Kellog Company was having considerable trouble with its transmitters, and that, being too busy himself to devote any time to experiments, and knowing Hansen, and having a friendly interest in him, he gave him an opportunity to work along original lines. Hansen immediately commenced experimental work, and, according to his own testimony, continued such work until fall, when he was put to work testing transmitters, in which position he continued until June, 1901, when he severed his connection with the company. Thus far there is no conflict in the testimony, Hansen himself testifying that he was "employed to design a transmitter." Hansen claims he conceived and made a sketch of the invention in issue in June, 1899, and that he shortly thereafter disclosed his invention to

others.   He introduced in evidence the sketch he then made, but this sketch shows no means for securing the block in its support, and therefore falls short of showing the invention. The only witness whose testimony even approaches corroboration of Hansen's claim is the witness Meyer.   Meyer testifies that on *one occasion* during the latter part of June, 1899, *four years before he testified,* Hansen disclosed the invention to him. The witness reproduced on the witness stand a sketch which not only contains all that Hansen's original sketch disclosed, but the means for securing the block as well.   The witness admitted that he had discussed the matter with Hansen and his counsel before testifying, and that they had shown him sketches.   The Examiners-in-Chief say of this witness: "This testimony, eve<sup></sup> if it were sufficient to disclose a device capable of the mode of operation called for by this limited issue, is not convincing. Oral testimony that on a single occasion a witness has seen a sketch, which, four years after, he is able to reproduce, is evi-dence of a memory so remarkable that the statement is hardly credible."   The Commissioner, in commenting on the testimony of this witness, says:   "When it is considered that Meyer testi fies to a detail of the invention alleged to have been disclosed to him some four years before, and then on a single occasion, that he identifies no sketches or exhibits in support of his oral testimony, that his memory of later events appears uncertain, and that he may have confused more recent disclosures of this detail of the invention with the date of the original disclosure, his testimony is by no means convincing as to the existence of the adjusting feature of the issue in the invention disclosed to him in 1899.   Since this testimony is all the corroborating evidence Hansen is able to produce concerning his alleged conception of the complete invention of the issue in 1899, it is held insufficient to establish satisfactorily said conception."   The record discloses additional reasons for believing Hansen did not disclose this invention to Meyer or anybody else during 1899.   While he constructed six or seven different transmitters during that period of experimentation, he did not construct any embodying this invention.   He says the reason he did not was because he

lacked mechanical skill, but we are forced to conclude that the real reason was because he did not possess the requisite inventive idea. He does not contend that he concealed his ideas from his superiors, but, on the contrary, complains that he was unable to interest them therein. He admits that Mr. Miller examined and discussed with him several of the transmitters he was attempting to develop, and that Mr. Miller was frequently in the room where he was conducting his experiments. Miller says: "I was, I may say, on a constant hunt for a good idea in transmitters. I remember distinctly when Mr. Dean first showed me such a transmitter as you have described; I at once saw the possibilities of it, and I believe I would have done so had Mr. Hansen shown it to me. * * * Mr. Hansen's statement that I would never take the time to listen to his ideas is absurd, and is untrue. * * * Mr. Hansen was assigned by me to the duty of producing a new transmitter, and in doing so was instructed to make up models of any ideas he evolved, which seemed practicable. The result was, after several weeks of very conscientious effort on his part, an absolute failure to produce what I, or any other of the engineers of the Kellog Company at that time, considered to be a practical idea. * * * The result, as I have said, was failure, and it was with regret, partly on Hansen's account, and partly because I wanted a good transmitter, that Hansen was taken off this work and put on the routine work of testing. * * * During the early employment of Mr. Hansen in the Chicago factory, that is, during the summer and fall of '99 at which time he claims, I believe, to have produced the invention in controversy, I was particularly careful to get to the bottom of Hansen's schemes. To have done otherwise would have certainly been poor management on my part, for I had assigned Mr. Hansen to a certain definite line of work, with the hope of his achieving a certain definite result."

Dean entered the employ of the Kellog Company in October, 1900, and soon thereafter developed the invention in issue, which he had previously conceived. This transmitter went through Hansen's hands to be tested, and he therefore had an

opportunity to become perfectly familiar with its construction. He made no complaint to Miller that the invention was his, although he did make some complaint to others. He nevertheless continued in the employ of the Kellog Company for several months. Soon after leaving the company he engaged with the American Electrical Telephone Company, and in July, 1901, four months after Dean's application was filed, and about seven months after he had tested one of Dean's transmitters, he for the first time constructed a transmitter embodying this invention.

On this evidence, we think, the Commissioner was fully justified in reaching the conclusion that Hansen has not overcome Dean's record date. We are convinced that, had Hansen conceived and disclosed this invention in 1899, it would have been adopted by the Kellog Company. That Hansen may have had a certain definite result in mind is quite probable, but that he had devised any means for accomplishing that result is disproved by the surrounding facts and circumstances. His conduct from the time he says he conceived the invention, in June, 1899, to June, 1901, when he left the Kellog Company, was certainly inconsistent with his present contentions.

Without discussing the question of his lack of diligence from June, 1899, the date he says he conceived the invention, to a period subsequent to Dean's filing date, we hold that he has failed to show either conception or reduction to practice prior to March 22, 1901, Dean's record date, and therefore affirm the decision of the Commissioner; and it is so ordered.

The clerk of the court will certify this opinion and the proceedings of this court to the Commissioner of Patents, as required by law.                    *Affirmed.*